PEOPLE, PLAINTIFF AND APPELLEE. v. TORRES, DEFENDANT
AND APPELLANT.

APPEAL from the District Court of San Juan, Section 2, in
a Prosecution for Violation of Section 328 of the Penal
Code.

No. 1451.—Decided February 27, 1920.

NONSUIT—WAIVER.—When the defendant's motion for a nonsuit is overruled and
he goes on with the trial and presents his own evidence, it is understood that
he waives his motion for a nonsuit.

APPEAL—EVIDENCE.—Although the evidence may be slightly contradictory, if the
preponderance of it supports the judgment, the judgment will be affirmed
even without applying the general rule that where there is a conflict in the
evidence the Supreme Court will accept the findings of the trial court.

AUTOMOBILES—SPEED.—The fact that a driver may think that he has a clear road
ahead of him does not justify him in running at an excessive rate of speed.

The facts are stated in the opinion.

*Messrs. Francis & de Jesús* for the appellant.

*Mr. J. E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

The defendant, José Gregorio Torres, by virtue of a com-
plaint filed in the Municipal Court of Río Piedras, was
charged with having violated section 328 of the Penal Code
as amended, it being alleged therein that the said defendant
on the 10th of February, 1919, in Hato Rey, Río Piedras,
drove an automobile so negligently and illegally that it struck
a truck, wounding José Viscarán and the defendant himself
by the impact.

The errors alleged are two:

First, that the court should have granted a motion for
nonsuit and,

Second, that the proof was insufficient to convict the de-
fendant.

With respect to the first assignment of error we may sim-
ply say that there was sufficient *prima facie* proof to convict
defendant, as will appear by a discussion of the whole evi-
dence. Furthermore, a defendant who goes on and presents

his own proof, as here, waives his·motion for nonsuit. *People*
v. *Ojeda,* 26 P. R. R. 391.

· To support his contention that the proof in the district
court did not justify a judgment against him, the defendant.
maintains that his speed at the point of the accident was not
excessive, being only 25 or 30 miles an hour, and to justify
that the defendant was so going within the speed limit fixed
by the law the appellant attempts to show that within a hun-
dred feet of the place where the accident happened the ma-
chine that he was driving was compelled to stop and that
it was impossible for a machine of this kind that he was
driving to develop a greater speed than 25 or 30 miles an
hour.

A policeman, who gave no direct evidence of the speed,
testified that the truck turned into the principal road from
San Juan to Río Piedras at Stop 27½, going to Río Piedras;
that it entered from the right-hand side of the road; that
the truck was fully in the road when the machine of the de
fendant struck the right hind wheel of the truck, causing the
heavy truck to turn completely so that its front was towards
San Juan, and damaging very severely both the truck and
the automobile.

One of the men who was working in the truck gave testi-
mony tending to show that the truck came out of a lane on
the right-hand side of the road going to Río Piedras and
turned toward Río Piedras and was fully on the road when
the automobile of the defendant came along and struck the
right hind wheel of the truck; that the occupants of the truck
looked both ways before entering on the road and that they
saw nothing either way for some distance; that the blow was
so great that it turned the machine completely around with
its front toward San Juan.

The only other witness for the Government was someone
who testified that he had lived along the road for three years;
that he witnessed the collision; that the machine of the de-
fendant was proceeding along at a terrific (*espantosa*) rate;

that his attention was drawn to the machine by some of his neighbors calling out, "Look at this machine coming!''; that in all his experience on the road he had never seen a machine go so rapidly.

All of these witnesses gave evidence tending to show that two of the occupants of the defendant's automobile were hit and fairly severely injured.

We think this evidently was a *prima facie* case of negligence under section 328 of the Penal Code.

One of the witnesses for the defendant, the man who was most injured, gave testimony tending to show that the machine was going at a rate of 40 or 50 miles an hour. It is true that when further questioned he said that his memory of the event was not very clear, but the court had a right to believe from his testimony, as corroborated by the other proof, that his estimate of the rate of speed was reasonable.

The defendant and other witnesses also gave testimony tending to show that the defendant was only going at the rate of 25 or 30 miles at about the time of the accident. The defendant also testified that the truck had stopped when he saw it; that, as the truck driver must necessarily have heard his klaxon, he thought he had a right to go by, and also that he saw the truck in advance.

One of the principal theories of the defense was, as brought out by their expert witness, that, as the machine of the defendant had to stop for an automobile passenger coach and as the distance between the place where the defendant had to stop and the place of the accident was so short, it would have been impossible for the defendant to develop the speed of 40 or 50 miles an hour.

It is to be noted, however, that the first witness for the defense says that the driver of the passenger coach said that the defendant, whether he stopped or not, went by him at a speed of eight or ten miles an hour.

The answer to this theory of the defendant is that the court had a right to believe from the testimony that the

defendant was going forty or fifty miles an hour, if not more, independently of whether the defendant's proof was inconsistent with this theory; that the distance between the two points might have been greater than the witness for the defense thought; that the defendant might have inadequately reduced his speed to avoid a collision when he saw the truck; that the defendant might not have stopped, but only reduced the speed to pass the passenger coach, and even that the witnesses were entirely mistaken.

The physical facts and the testimony of the government's witnesses make out such a strong case that any inconsistent theories of the defense would be bound to yield even without applying the familiar practice of this court in refusing to reverse the finding of the court below in the absence of a conviction that its decision was very clearly against the weight of the evidence or that the defendant did not have a fair trial.

As this theory of defendant cannot be successfully maintained, we have no doubt that the defendant, although admitted to be generally a careful driver, was violating the law.

Without any particular reference to this defendant, we cannot too strongly combat the idea that because the defendant saw, or thought he saw, a clear way ahead of him he might go ahead regardless of speed. Every one has an equal right to the road, as set forth in *People* v. *Blandford*, 23 P. R. R. 580, and the cases cited. There seems to be a notion in the minds of a good many chauffeurs that an apparently clear road justifies any speed. In *State of Ohio* v. *E. E. Schaefer*, L. R. A., 1918–B, 951, a case of alleged manslaughter for the undue operation of an automobile, the court said:

"Statisticians have calculated that when you vest average men with large power, you make either a tyrant or fool out of 10 per cent of them. The estimate is very conservative. Indeed, if it err at all, it is upon the ground that it is too low, and it may well

be doubted if the ratio is appreciably reduced in case of putting 300,000 automobiles, with their tremendous speed, power, and impact, under the direction and control, or lack thereof, of the usual drivers. Ten per cent of the 300,000 would make 30,000 that are in the hands of tyrants, fools, or incompetents, speed maniacs, that are a constant menace and danger to the safe and conservative 90 per cent of automobile drivers, to other vehicle drivers, and to the millions of foot passengers. 'Safety first' must not be sacrificed for 'speed first.' The daily press is full of hairbreadth escapes and casualities, from slight injuries on the one hand to instant death on the other. It may well be said 'that the railroad locomotive has killed its hundreds, but the automobile is killing its thousands.' "

Forty or fifty miles an hour, although in excess of the limits fixed by law, may be all right if no accident occurs. A man who goes at this speed, and especially one who exceeds it, must be entirely sure that he is not interfering with the rights of others. Anybody who looks for a reasonable distance up and down the road and sees nothing coming has a right to cross it. A chauffeur must have his machine under such control that he can avoid doing injury to vehicles or foot passengers who have a right to cross the road and are doing so decorously.

The judgment must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro, Aldrey and Hutchison concurred.